Thank you Mr. Clerk. Good morning again. And the second case is case number 4-1-6-0-3-8-1. Again, it's in re Marriage of Dambacher. Mr. Costello in his chair, appearing for the appellant in the Appellee. And Mr. Costello, you may proceed. Thank you. My client, of course, is deceased, but his goal and wish up until his death, obviously still stands, is that he does not want the Corporation for D. Green to be dissolved. And it doesn't have to be. It was his lifelong work, family affair, and that was his wish. I can clear up some of the points that have been made earlier arguing the different case. But basically, the argument and attack was made to the trial judge that he could not dissolve the Corporation, that it was not within his jurisdiction. He could not do so. Now, the law is the law, and we're supposed to follow it, otherwise we have chaos. And basically, the argument, one, is the Corporation is a necessary party to its own dissolution. No effort was made to have the Corporation named as a party. We did cite the statute, but the statute does not state, the Corporation statute does not state in dissolution matters that a Corporation must be a necessary party. However, cases have alluded to it that we've cited on page 21 of our brief that a Corporation should have been a necessary party. Secondly, if the Corporation is to be dissolved, and we're claiming no authority by the court under the divorce statute, there must be necessary parties involved. Now, whatever they did, failed to intervene, didn't come in, whatever, doesn't change the fact that they are necessary parties. And Robert was adamant about the Corporation should not be dissolved. And we brought that up time and time again to the trial judge. And with respect to Judge Sanchez, he ruled it could be. We claim that it's a void judgment because there was no jurisdiction over two necessary parties. And even if there was a valid agreement, a valid doctrine, it was against the manifest way to the evidence. What's the Corporations Act say? And why do we rely on it? Judge Sanchez said, I'm ordering you to voluntarily dissolve the Corporation. Ordering someone to do something is not a voluntary act. Now, there is a provision in the Corporation Act 12.15, voluntary liquidation of the Corporation. That wasn't used here. The court said it was. How can you voluntarily dissolve a Corporation with all those rights and votes, two-thirds, et cetera, in the voluntary dissolution section? He didn't apply the right statute. The statute that has to be applied is under 12.56. That is the remedy that has to be used to involuntarily dissolve a Corporation. It wasn't used. He could not, in the divorce action, since the Corporation Act is controlling, could not dissolve the Corporation. Mr. Costello, can I ask, just for clarification, to get a big picture view of your argument in regards to the ordering dissolution of the Corporation. You're asserting that the trial court was without jurisdiction to enter that order as one argument. And then are you making a secondary argument that even if it did possess jurisdiction, that that judgment was erroneous? No, Justice. I'm arguing, one, it didn't have jurisdiction, and two, the jurisdiction had to be under section 12.56, which is under the statute of dissolution in the Corporation Act. What I'm saying briefly and concisely as I can, he couldn't dissolve a Corporation because it had to go under the Corporation Act. We may be saying the same thing, but in different ways. First argument is no jurisdiction to do what he did. Second argument is if he were to do what he did, he erred in doing it. That's correct, Your Honor. But he couldn't, the main thrust is he couldn't do it. Now, he talked about Robert, and they mentioned it in another argument, Robert had 158 acres that was given to him by his mother, which is not owned by 4D Green. It was worth approximately 2.1 million. He voluntarily, without court authority or counsel's knowledge, gave that to his sons, Art and Scott. The court alluded to this fact during the trial and in its judgment that, well, we could have used, Robert could have used that 2.1 million and buy out Cheryl, and the Corporation could have stayed viable. The court had no authority, although he asked to consider non-marital assets, and it was already given away without authority. He considered that if that money, farmland, was still in Robert's name, he could have bought out Cheryl, who had a right to be bought out, and therefore there'd be no dissolution argument. Mr. Costello, I want to backtrack just a little bit. Let me give you a hypothetical. Let's assume that the sons were allowed to intervene. Is it your position, even if they had been made parties to the case, that the judge in the dissolution case didn't have the authority to order the Corporation dissolved, or in which technically it didn't order it dissolved, it ordered them to do it voluntarily? Yes, Justice. The court had no authority, even if they came in to dissolve the Corporation. It had to go under the Business Act doctrine, under a lawsuit under the Business Act. So you're not saying, then, that because they were necessary parties and they weren't part of the dissolution, that the judge, I mean, that kills that argument, right? Right. Well, it's another read to hang on, Your Honor, that they weren't in the case and they should have been if, in fact, he's going to do a dissolution. But it is your position that even if they had been in the case, he did not have the authority? That's correct, Your Honor. Justice, that's correct. Must have specific authorization. There are cases cited from the Corporation Act on page 21 and 22 of our brief. In a nutshell, in a divorce, there are no white lilies. Both sides were contentious, but to be fair, each is entitled to an equitable distribution of the assets. The court could not figure out a way to, since he had, everything was, Robert presented evidence of the Corporation worth, basically the profit loss statement. It was agreed upon by the parties, the worth of the value of the land in 4D. So that's not an issue. He could have, we're surmising now, but the judge could have said, okay, Robert, you buy out her 200 shares. And that's happened in divorce cases where a party has been ordered, in one case cited, a wife was ordered to refinance the house to pay the husband some money. That could have been done. There's creative financing. Robert could have raised enough money with his shares of stock to buy out Cheryl. There was no need, well, no authority, but there was no need to dissolve the Corporation. One further point, the court said, how are these people going to live in their old age? Robert gave away $2.2 million to his sons. He's living on $1,000 a month from the Corporation, as Cheryl was given $1,000 a month, and he has Social Security. And Cheryl was at age of retirement, practically, and had her own Corporation. How are these people going to live? So the courts thought only one way, sell the Corporation, dissolve it. I want to point out that the court left a judgment of a life insurance policy of $400,000, I learned this Monday. It was paid Monday. So Cheryl received $400,000 from the judgment. I would suggest that if you receive benefits from a judgment, you waive your appeal, but I have no chance to brief this. I just discovered payment on this Monday, actually. So we're not contesting that Cheryl received the money, but it's a point in not dissolving the Corporation and making some other arrangements financially. The judgment was awarded to Cheryl, the house, the Merrill home. She built it. We wanted the house to live in. We had Parkinson's. Since she's deceased, we're waiving that argument that we want the house. It's Cheryl's. We'll just take the judgment, whatever it said, we get half the equity. So that's waived. The other thing, and I'll rest with this, I think the court has got a grip on the facts of this case, is that the court awarded Cheryl $78,000 towards her attorney's fees, which I believe were $192,000. And we've argued that it's an abuse of discretion. I mean, Robert fought tooth and nail, presented evidence. Nothing really warranted being stopped with attorney's fees. The court said he was arguing the position of his sons, Art and Scott. They weren't the positions of his sons. They were his positions in this divorce. And he thought that they just unduly delayed everything. We find that the court's discretion to determine all the factors in a divorce matter, that the court abused its discretion in awarding $78,000. In the event the court has any more questions, I don't see Mr. Costello, but you will have rebuttal. Thank you. Ms. Cherry. Thank you, Your Honor. I've never been in a situation before where we're arguing back to back some of the same issues. And since I know they're separate cases, I'm going to repeat myself a little bit. So if you don't want to hear it, let me know. First of all, Robert did not, at trial, make a contention about necessary parties. That was something that he raised after the fact. So with regard to that contention, again, he's got to meet the standard of what constitutes a necessary party to render this judgment void. And under the case law that I discuss in our brief, they have to show that these parties had a direct interest in the subject matter of this divorce. And I submit they did not have a direct interest. Their stock was not at issue in this divorce. Their rights were not at issue in this divorce. Their rights were not restricted by the ruling in this divorce. They still have those rights. All that happened in this case was the judge directed the parties who had the power because of the number of shares that they owned to proceed under 12.15 of the Business Corporation Act and liquidate the corporation. And as I discussed in the prior argument, this is something that was rendered necessary by the circumstances that existed at the time that this divorce was completed. And Mr. Costello starts off this presentation saying Robert didn't want this to happen. Robert wanted to keep the corporation. He wanted to keep the farmland. That may well be. But Robert clearly did the last act that made it absolutely no other alternative but to have the liquidation of the corporation. Mr. Costello just argued, well, there could have been some other way even under the circumstances for there to be some sort of Robert buying her out. There was no contention of that at trial. There was no evidence of that ability at trial. Had there been, there would have been a different situation. But the context we had at trial was the only, their major asset was this farm corporation. Neither party had the ability to buy out the corporation. There was no ability to do it. And so what had to happen was a liquidation for them to have the money to live on for the rest of their lives and for them to sever their relationship. Again, it is not, this is not a dissolution under 12.56 and the court had authority to do a dissolution, to order the parties to exercise their powers, their rights with their stock ownership to do a voluntary, what is called a voluntary liquidation of the corporation. And 12.15 defines what a voluntary liquidation of, what is necessary for a voluntary liquidation of the corporation. This is of the corporation. This does not require the shareholders to be acting voluntarily. This is what is a voluntary liquidation of the corporation if you have a vote of the majority of the shareholders. And so this argument that Mr. Costello makes and was also made by the interveners is just not correct. The statute doesn't require that he be acting voluntarily. And as I previously stated, a party in a divorce case can be compelled to do things that party doesn't want to do when it is necessary to accomplish the appropriate remedy under the divorce case. And that is what happened here. So if the party is compelled to do something that is still considered to be a voluntary act, is that what you're saying? Well, what I'm saying, the voluntary, the term voluntary applies to the corporation is voluntarily liquidating. The corporation is a separate entity. It is voluntarily liquidating. And the way it voluntarily liquidates is a vote of the shareholders. So it's not that Robert is voluntarily doing it. And yes, the court can order someone to do things that court, that party doesn't want to do. It happens quite often in divorce cases. So whereas normally when you sell land, you do that voluntarily, the court can order you to do that. And so I thought for a few seconds, I could think of all sorts of other things that the court, that normally if you do it, you do it voluntarily. But the court can order you to do it. So in a divorce case, the court has the power to do that. The other alternative would have been the court give all the stock to Cheryl and place some conditions on her for eventually reimbursing Robert after there's a buyout. What the court wanted to do is it wanted to do an equal division. It wanted to equalize the burdens of the sale, the cost of the sale, the tax consequences of the sale. So it said you're each getting half the shares, but you're getting this subject to the condition of you've got to liquidate the corporation. You've got to exercise your powers to liquidate the corporation. And I submit that he had the authority under the Divorce Act to do it. And as I, again, to suggest that instead of the court doing it this way, the court should have said, well, I'm going to give you equal shares and you're going to have to just, Cheryl, you're just going to have to pursue it under 12.56. Trying to force them to buy you out was not a sufficient, would not have been a sufficient remedy because nobody was conceding for purposes of that case a factor that would be necessary before she could compel that buyout. And this court's task was to get something done that would finalize and try to end the involvement of these parties. Now, as Justice Turner asked in the other earlier argument, that hasn't occurred. There are a number of reasons that that hasn't occurred. But I don't know that that, first of all, there's no record of that, and I could give you my take on all those reasons. But I don't believe that that's pertinent to the appeal because the appeal is whether the trial court erred in what he determined. The other thing I want to point out here, again, and this might have been touched on in some of the court's questions of Mr. Costello. And as Mr. Costello pointed out, he argued in this case that the court didn't have the authority to dissolve the corporation, that it had to proceed under 12.56, where he is arguing now that the judgment was void because necessary parties weren't joined. Again, that doctrine of representation, which I discussed in this brief and which I discussed in the other one, if what that party would have done had that party intervened is already done in this case, which it was, because Robert made the arguments that the interveners are seeking to make at this point in time, that's already occurred. So that, under the doctrine of representation, you don't void the judgment. They've already had, those arguments have already been made. And if this court said, oh, well, they should have been parties, send it back, for them to argue the same arguments, it would just create more delay, create more attorney's fees, and not accomplish any appropriate purpose. Robert does have the standing in this case to argue whether or not the trial court abuses discretion in making that determination. And I submit that the trial court clearly, properly exercised its discretion in determining that that was the appropriate remedy and the trial court had that power to do. The trial court made detailed findings of fact, none of which are disputed, other than Mr. Kustel has some discussion about whether there was some profit of the corporation. Other than that, none of those facts are disputed of the reasons that the judge made his award. And his findings were well within the manifest way to the evidence, and it was not an abuse of discretion for him to determine that this was the way that this marital estate had to be disposed of. With regard to the attorney's fees issue, again, the judge made some detailed findings of the reasons that he felt that Robert had caused delay in this case. And in my brief, I go through a number of things also, and I'm not going to belabor them. But this was a case that took an extended period of time to try. There were numerous things that took place that delayed it. There were changes of counsel by Mr. Dombacher. We had a trial that was of extreme length where witnesses were called for no real purpose. The trial judge was in the best position to see what was going on and to make a determination of whether delay was being caused because of actions of Mr. Dombacher. And his determination is not against the manifest way to the evidence, and his ruling was not an abuse of discretion. I would also point out that the ruling of attorney's fees is also supported by the financial position of the parties. Because, again, we have Robert Dombacher who had a $2 million piece of real estate that he could have used to meet his attorney's fees. He had other non-marital monies he used to meet attorney's fees. My client did not have that. My client had substantial debt for attorney's fees because of all of the litigation that had gone on in this case, this prolonged divorce trial. I mean, we had repeated trial dates that were set that were continued over our objection on motion of Mr. Dombacher. She had those fees. He had a much better ability to meet those fees than she. And under the Illinois Marriage and Dissolution of Marriage Act, I submit that the award of fees was appropriate and was not an abuse of discretion. Unless the court has any questions. I don't see anything. Mr. Costello, any rebuttal? To be clear, you cannot dissolve a corporation in a divorce case. The statute is the Corporation Act. Although the word necessary parties were not used in the litigation at the trial, whenever it was raised that the court had no jurisdiction, an attempt would be made to follow that up, the court simply said, I have ruled. You shut up. You don't pursue any further. So that's why it wasn't mentioned in the trial. There was no mention of financing. And yes, it's correct during the trial about the buyout of Cheryl, but the court could have made it structured in such a fashion that if financing could not be made, that Cheryl would have to live in the corporation.  And the last point. Cheryl could have gone into the corporation lawsuit 12.56 on mismanagement of the corporation. Robert Stock was taken away from him. Prior, there were five consulants or four for Robert. Was taken away on the allegation that Cheryl was getting placed in a subordinate position in the corporation. So the court gave the voting shares of Robert to Cheryl, where she promptly changed the board packet, put her brother on the board, and two others who had no fond knowledge of the corporation. Be that as may, she could have and was required if she wanted to dissolve the corporation or the court under 12.56. I have no further questions. I don't see any questions. Thanks to both of you. The case is submitted. The court stands in recess.